# EXHIBIT B

**The Florida Senate**

# BILL ANALYSIS AND FISCAL IMPACT STATEMENT

(This document is based on the provisions contained in the legislation as of the latest date listed below.)

Prepared By: The Professional Staff of the Committee on Regulated Industries

BILL: CS/SB 1120

INTRODUCER: Regulated Industries Committee and Senators Gibson and Powell

SUBJECT: Commercial Telephone Solicitation

DATE: March 25, 2021 REVISED: 

| | ANALYST | STAFF DIRECTOR | REFERENCE | ACTION |
|---|---|---|---|---|
| 1. | Harmsen | McKay | CM | **Favorable** |
| 2. | Sharon | Imhof | RI | **Fav/CS** |
| 3. | | | RC | |

**Please see Section IX. for Additional Information:**

COMMITTEE SUBSTITUTE - Substantial Changes

## I. Summary:

CS/SB 1120 requires all sales telephone calls, text messages, and direct-to-voicemail transmissions to have the receiving consumer's prior express written consent if the call will be made using an automated machine to dial the recipient's phone number or will play a recorded message upon connection with the recipient.

The bill creates a rebuttable presumption that a sales call made to a Florida area code is made either to a Florida resident or to a person in this state at the time of the call.

The bill creates a private right of action to enforce the provisions in the bill. An aggrieved party may petition a court to enjoin the violating party. A prevailing plaintiff may recover the greater sum of either their actual monetary damages or $500, plus attorney fees and costs. Additionally, a court may increase damages by up to three times, for a willful or knowing violation.

The bill amends the Florida Telemarketing Act to prohibit telephone sellers or salespersons from calling consumers outside of the hours between 8 a.m. and 8 p.m. in the consumer's time zone and prohibits telephone sellers or salespersons from contacting consumer on the same subject matter more than three times in a 24-hour period. The bill also clarifies that calls made through an automated dialer or recorded message are subject to the same prohibitions.

The bill is effective July 1, 2021.

## II. Present Situation:

### Unsolicited Phone Calls

Consumers are often inundated with unwanted calls. In fiscal year 2020, the Federal Trade Commission (FTC) received 293,071 complaints from Florida consumers about unwanted telephone calls.[1] The Federal Communications Commission (FCC) reports that unwanted calls constitute their top consumer complaint.[2] Unwanted calls can come in many forms, including robocalls[3], which use an "automatic telephone dialing system,"[4] referred to as an autodialer, and play a recorded message upon connection with the consumer; "spoofing" or "spoofed calls," which transmit falsified information to a consumer's caller ID to disguise the solicitor's identity; and unwanted telemarketing calls.[5]

State and federal action to combat these issues are limited because there are legitimate and legal uses of this technology. For example, a doctor's office may legally use a robocall to remind one of an upcoming appointment.[6] Additionally, some solicitors act outside the scope of federal or state enforcement authority.

### Federal Law

#### *Telephone Consumer Protection Act*[7]

The Telephone Consumer Protection Act of 1991 (TCPA) protects U.S. consumers from unwanted communications by restricting the use of autodialers, prerecorded sales messages, and unsolicited sales calls, text messages, or faxes.

The TCPA prohibits telephone solicitations that:

- Are made to residences before 8 a.m. and after 9 p.m.;

---

[1] Federal Trade Commission, *Do Not Call Data Book 2020* (Oct. 2020), https://www.ftc.gov/system/files/documents/reports/national-do-not-call-registry-data-book-fiscal-year-2020/dnc_data_book_2020.pdf (last visited Mar. 17, 2021).

[2] Federal Communications Commission, *Stop Unwanted Calls and Texts* (Mar. 2, 2021), https://www.fcc.gov/consumers/guides/stop-unwanted-calls-and-texts (last visited Mar. 17, 2021).

[3] "At the FCC, we use the term 'robocalls' to refer not to just prerecorded calls but also autodialed calls, regardless of whether the call is live or prerecorded." *Stopping Fraudulent Robocall Scams: Can More Be Done?*, Hearing Before the S. Subcomm. on Consumer Protection, Product Safety, and Insurance of the Comm. on Commerce, Science, and Transportation, 130th Cong. (July 10, 2013) (Statement of Eric J. Bash, Associate Chief, Enforcement Bureau, Federal Communications Commission) https://www.govinfo.gov/content/pkg/CHRG-113shrg85765/pdf/CHRG-113shrg85765.pdf (last visited Mar. 17, 2021).

[4] An "automatic telephone dialing system" or "autodialer" is equipment that has the capacity to produce or store phone numbers using a random or sequential number generator, and to call those phone numbers. 47 U.S.C. s. 227(a)(1).

[5] "Fraudsters have also further exploited caller ID spoofing, which induces the consumer to pick up the phone, while at the same time enabling the scammer to hide its identity and location." *Stopping Fraudulent Robocall Scams*, Hearing, *supra* at n. 3 (Statement of Lois Greisman, Associate Director, Division of Marketing Practices, Bureau of Consumer Protection, Federal Trade Commission).

[6] Federal Communication Commission, Consumer and Governmental Affairs Bureau, *Report on Robocalls* (Feb. 2019), CG Docket No. 17-59, https://www.fcc.gov/document/fcc-issues-report-illegal-robocalls (last visited Mar. 17, 2021). *See also*, Federal Communications Commission, *Stop Unwanted Calls and Texts--Spoofing*, (Mar. 2, 2021) https://www.fcc.gov/consumers/guides/stop-unwanted-calls-and-texts (last visited Mar. 17, 2021).

[7] 47 U.S.C. s. 227. *See also*, 47 CFR s. 64.1200 (2012).

- Fail to provide the consumer with the solicitor's identity, including his or her true phone number via caller identification service,[8] and an opportunity to opt out of the current call, and all future calls, made by that solicitor;
- Send artificial or pre-recorded messages to a residential line; and
- Use an autodialer, artificial message, or pre-recorded messages to a cellular, emergency, or hospital room line.

The TCPA grants a private right of action to pursue actual monetary damages or up to $500 per violation.[9] State attorneys general and the FCC also have jurisdiction to investigate and file civil claims based on violations of the TCPA.[10]

The TCPA's protections extend to text messaging in the same manner that they apply to telephone calls.[11]

### *Federal Do Not Call Program*

The FTC, in concert with the FCC, administers the National Do Not Call Program.[12] Telephone solicitors may not contact a consumer who participates in the National Do Not Call Program, unless the calls are:

- Made with a consumer's prior, express permission;
- Informational in nature, such as those made to convey a utility outage, school closing, or flight information; or
- Made by a tax-exempt organization. [13]

### *Truth in Caller ID Act*

The Truth in Caller ID Act of 2009[14] protects consumers by prohibiting any person from transmitting misleading or inaccurate caller ID information with the intent to defraud, cause harm, or wrongfully obtain anything of value. The FCC investigates and prosecutes violations of the act under its rules.[15] The FCC has taken enforcement actions totaling $450 million in fines, in recent years against telemarketers for call spoofing violations—of note, the FCC imposed its largest fine ever against a Florida-based timeshare marketing operation.[16]

---

[8] 47 C.F.R. s. 64.1601(e). *See also*, Federal Communications Commission, *Public Notice: FCC's Caller ID Rules for Telemarketers Become Effective* (Jan. 29, 2004) https://apps.fcc.gov/edocs_public/attachmatch/DA-04-206A1.pdf (last visited Mar. 17, 2021).

[9] 47 U.S.C. s. 227 (c)(5).

[10] 47 U.S.C. s. 227 (f).

[11] Federal Communications Commission, *FCC Strengthens Consumer Protections against Unwanted Calls and Texts* (Jun. 18, 2015), https://apps.fcc.gov/edocs_public/attachmatch/DOC-333993A1.pdf (last visited Mar. 17, 2021).

[12] Federal Communications Commission, *Stop Unwanted Calls and Texts* (Mar. 2, 2021), https://www.fcc.gov/consumers/guides/stop-unwanted-calls-and-texts (last visited Mar. 17, 2021).

[13] 47 U.S.C. s. 227(a)(4). *See also*, 47 C.F.R. s. 64.1200.

[14] 47 U.S.C. s. 227 (e).

[15] *See*, 47 CFR s. 64.

[16] Federal Communications Commission, *The FCC's Push to Combat Robocalls & Spoofing*, https://www.fcc.gov/spoofed-robocalls (last visited Mar. 17, 2021). *See also*, Federal Communications Commission, *FCC Fines Massive Neighbor Spoofing Robocall Operation $120 Million* (May 10, 2018) https://www.fcc.gov/document/fcc-fines-massive-neighbor-spoofing-robocall-operation-120-million (last visited Mar. 17, 2021).

To protect individual privacy concerns, an individual caller may still request to hide his or her phone number when making a call.[17]

**Florida Law**

***Florida Telemarketing Act***

The Florida Telemarketing Act (Telemarketing Act)[18], requires commercial telephone sellers, usually a business entity, and their individual salespersons to obtain a license from the Department of Agriculture and Consumer Services (department). An applicant for licensure as a commercial telephone seller must submit, among other information:

- Its criminal, civil, and administrative disciplinary background;
- All phone numbers from which the applicant will solicit business and the physical address at which the phones will be located;
- The script it will use during a solicitation, or any informational literature it will provide to a consumer; and
- A bond, letter of credit, or certificate of deposit to serve as security in any future case of fraud, breach of contract, financial failure, or violation by the licensee.[19]

As part of their licensure, individual salespersons, who are hired by commercial telephone sellers to act as their salespersons, undergo a similar review of their criminal, civil, administrative or regulatory disciplinary history, but they are not required to post a bond, letter of credit, or certificate of deposit.[20]

Many solicitors are exempt from licensure under the Telemarketing Act, including religious, charitable, political, or educational organizations that have a s. 501(c)(3) or (6) exemption from the Internal Revenue Code; licensed securities, commodities, or investment brokers and dealers; and newspaper or cable television sellers, among others.[21]

Licensed telephone sellers and solicitors must identify themselves to the consumer within 30 seconds of the beginning of the phone call.[22] To ensure that the department can conduct thorough investigations, when needed, a licensed telephone seller must also maintain copies of their business records for at least two years—including all of the names and telephone numbers that they contacted.[23]

All telephone sellers and solicitors, whether exempt or not, are prohibited from calling consumers outside of the hours between 8:00 a.m. and 9:00 p.m., local time, in the called person's time zone.[24] Additionally, all solicitors must allow their name or telephone number to

---

[17] 47 CFR s. 64.1601.
[18] Part IV of ch. 501, F.S.
[19] Section 501.605, F.S.
[20] Section 501.607, F.S.
[21] *See*, s. 501.604, F.S.
[22] Section 501.613, F.S.
[23] Section 501.6175, F.S.
[24] Section 501.616(6). *See also*, s. 501.604, F.S., which provides a general exemption from the Telemarketing Act, "except ss. 501.608 and 501.616(6) and (7)."

be transmitted to the consumer if the equipment they use is capable.[25] This prevents solicitors from "spoofing' a different number or otherwise blocking their caller identification to induce a consumer to answer the phone.

***Florida Do Not Call Act***

*Do Not Call List*

The department also administers the Florida Do Not Call Act (also called the "Do Not Call List"), which prohibits unsolicited phone calls and text messages.[26] Residents who do not wish to receive sales calls may request to have their residential, mobile, or paging device telephone number included on the department's list.[27]

A communication is unsolicited, and therefore prohibited under the Do Not Call List, unless the contact is made:

- At the consumer's request;
- By a charitable or political organization that is seeking donations;
- As part of a survey, or for the purpose of research seeking an opinion;
- In connection with an existing debt or contract for which payment is due; or
- By a newspaper publisher, or his or her agent or employee, in connection with the publisher's business.[28]

*Continued Solicitations*

Section 501.059, F.S., further prohibits a telephone solicitor[29] from calling, text messaging, sending a direct voicemail transmission, or using automated telephone equipment to contact any consumer who has previously communicated to the solicitor that he or she does not wish to receive a telephone call, whether or not he or she is part of the Do Not Call List. However, this prohibition applies only to calls made by or on behalf of a seller who offers goods or services or a charity that solicits a charitable contribution.

*Automated Dialers and Recorded Messages*

Section 501.059(8), F.S., prohibits solicitations via telephone calls, text messages, and direct-to-voicemail transmissions if the communication is initiated with an automated system that selects or dials the telephone numbers (autodialer), or if the communication plays a recorded message upon connection with the consumer. Autodialed calls and recorded messages are permitted if (1) they are in response to a call that the consumer initiated, (2) the person initiating the call screens out unlisted telephone numbers and numbers that are on the Do Not Call list, or (3) made regarding goods or services that the consumer previously purchased.

This section also prevents call spoofing (in cases of solicitation calls), where a telephone call, text message, or direct-to-voicemail transmission does not transmit the correct originating

---

[25] Section 501.616(7), F.S.

[26] *See*, s. 501.059, F.S. Florida Department of Agriculture and Consumer Services, *Florida Do Not Call*, https://www.fdacs.gov/Consumer-Resources/Florida-Do-Not-Call (last visited Mar. 17, 2021).

[27] Section 501.059(3)-(4), F.S.

[28] Section 501.059(1)(h), F.S.

[29] Section 501.059(1)(f), F.S., defines a 'telephone solicitor' as a natural person or business that does business in this state by making or causing to be made a telephone sales call.

telephone number; and fraudulent attempts to disguise the caller's identity in order to defraud, confuse, or otherwise injure the call's recipient.

*Penalties*

A telephone solicitor who violates the provisions of the Florida Do Not Call Act is subject to a civil penalty with a maximum fine of $10,000 per violation, or an administrative fine with a maximum of $1,000 per violation, in addition to attorney's fees and costs.[30] The act does not provide for a private cause of action. The Department of Agriculture and Consumer Services and the Office of the Attorney General have exclusive enforcement authority.

## III. Effect of Proposed Changes:

**Section 1** amends s. 501.059, F.S., to require any person making a sales call using an autodialer or playing a recorded message upon connection with the consumer to obtain signed prior express written consent from the consumer.

The bill defines the terms "called party," "prior express written consent," and "signature."

Under the bill, "called party" means a person who is the regular user of the telephone number receiving telephonic sales calls.

"Prior express written consent" is defined by the bill to mean a written agreement that has the signature of the called party; authorizes the person making the call, text, or voicemail to deliver it using an automated system or recorded message; includes the number authorized to be contacted; and includes a clear and conspicuous disclosure informing the called party that they are:

- Authorizing the call to be made using an automated system or recorded message; and
- Not required to sign the written agreement as a condition of purchasing any property, goods, or services.

"Signature" means an electronic or digital signature recognized as valid under applicable federal or state contract law.

The bill deletes the provision authorizing the use of automated telephone dialing systems when:

- The call is made in response to calls initiated by the called party;
- The number called has been screened to exclude numbers on the DACS "no sales solicitation calls" list or any unlisted telephone number; or
- The call concerns goods or services previously purchased by the called party.

A rebuttable presumption is created by the bill, that a sales call made to any area code in the state is made to a Florida resident or a person in the state at the time of the call.

The bill provides a private cause of action for violations to s. 501.059, F.S., which allow the aggrieved party to obtain an injunction and recover their actual monetary damages or $500, whichever is greater. It authorizes a court to increase the award for willful and knowing

[30] Section 501.059(9), F.S.

violations and revises the attorney fees and costs provision from being available to the prevailing party to only being available in favor of a prevailing plaintiff.

**Section 2** amends s. 501.616(6), F.S., to reduce the hours during which telephone sellers and salespersons may call consumers. Currently, telephone sellers and salespersons may solicit between 8 a.m. and 9 p.m. local time in the consumer's location. The bill permits solicitations during 8 a.m. and 8 p.m. in the consumer's time zone.

The bill further prohibits telephone sellers and salespersons from calling a consumer more than three times over a 24-hour period about the same subject matter. This prohibition applies, regardless of the phone number a telephone seller or salesperson uses to call the consumer.

The bill also applies these prohibitions to a commercial telephone seller or salesperson's use of an automated dialer or recorded message.

The provisions of the bill will apply to licensed telephone sellers and salespersons, and those entities who solicit under the s. 501.604, F.S., licensure exemptions of the Telemarketing Act.

**Sections 3 and 4** reenact ss. 501.604 and 648.44(1)(c), F.S., respectively, to incorporate the changes made to s. 501.616, F.S.

**Section 5** provides that the bill takes effect July 1, 2021.

## IV. Constitutional Issues:

### A. Municipality/County Mandates Restrictions:

None.

### B. Public Records/Open Meetings Issues:

None.

### C. Trust Funds Restrictions:

None.

### D. State Tax or Fee Increases:

None.

### E. Other Constitutional Issues:

In *Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council*, the Supreme Court of the United States held that commercial speech should receive First Amendment protections.[31] The Court based its opinion on the public's right to receive a

---

[31] *See Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council*, 96 S. Ct. 1817 (1976).

free flow of commercial information.[32] Although commercial speech does receive protection, it is below the protection provided to completely protected speech, and states retain the ability to regulate commercial speech that is inherently misleading or that has proven to be misleading in practice.[33]

In *Central Hudson Gas & Elec. Corp. v. Public Service Commission of New York*, the Supreme Court of the United States established a four-part test for analyzing the limitations of advertising regulations.[34] Under the *Central Hudson* test, a state must show that any commercial speech regulation is aimed at regulating lawful and "non-misleading" commercial speech in service of a substantial state interest, in a manner that directly advances that interest, and that is no more extensive than necessary to serve that interest.[35] Although commercial speech regulations must meet the *Central Hudson* test, in *Bates v. State Bar of Arizona*, the Supreme Court held that reasonable time, place, and manner restrictions on advertising is authorized if the content or subject matter is not regulated.[36]

A state law that has the practical effect of regulating commerce that occurs entirely outside of the state's borders is invalid under the Commerce Clause of the of the U.S. Constitution, regardless of its intent to reach outside of the state's borders.[37] Conversely, the dormant commerce clause prohibits states from enacting laws that unduly burden interstate commerce.[38]

A Florida law that prohibited persons from causing false information to be displayed on the call recipient's caller ID system was found to impermissibly regulate commerce wholly outside of Florida by making it impossible for parties to use or offer caller ID spoofing services anywhere.[39] The Court reasoned that the law affected interstate commerce because the increased use of mobile phones and call forwarding make it impossible to be certain where the parties called are located.

> For example, a business located in New York might place a call, using caller ID spoofing services, to a telephone number with an Ohio area code. Because of call forwarding and the mobility of cellular telephones, the recipient of that call might be present in Florida, and the New York business would be criminally liable for violating [the law] when they called the Ohio telephone number. . . . The logical consequence of this impossibility is that Plaintiffs are unable to offer caller ID spoofing services anywhere in the country without risking criminal liability under Florida's statute.[40]

---

[32] *Id.*
[33] *See In re R.M.J.*, 102 S. Ct. 929 (1982).
[34] *See Central Hudson Gas & Elec. Corp. v. Public Service Commission of New York*, 100 S. Ct. 2343 (1980).
[35] *Id.*
[36] *See Bates v. State Bar of Arizona*, 97 S. Ct. 2691 (1977).
[37] *Healy v. Beer Institute, Inc.*, 491 U.S. 324, 332 (1989). *See also*, U.S. CONST. art. 1 § 8, cl. 3.
[38] *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 90 S.Ct. 844 (1970).
[39] *Taltech Systems, Inc. v. McCollum*, 2009 WL 10626585 (S.D. Fla. July 16, 2009).
[40] *Id.*

As recently as 2020, the United States District Court for North Dakota used the reasoning in this Florida case to rule that a North Dakota anti-spoofing statute violated the Commerce Clause, despite an exemption that would have exculpated the caller if they reasonably believed the called-party was not physically within North Dakota.[41]

It is unclear whether the bill's presumption regarding Florida area codes will have an effect on interstate commerce to an extent that it has the practical effect of regulating commerce outside of Florida's borders.

## V. Fiscal Impact Statement:

### A. Tax/Fee Issues:

None.

### B. Private Sector Impact:

None.

### C. Government Sector Impact:

The bill adds prohibited acts to the Florida Telemarketing Act. The department, as enforcing authority of the act, estimates that is may see an increase in consumer complaints and prosecutions as a result; it also states that it will be required to expand its rulemaking to allow for implementation of these changes. The department states that this may result in an indeterminate costs to the department.[42]

## VI. Technical Deficiencies:

None.

## VII. Related Issues:

None.

## VIII. Statutes Affected:

This bill substantially amends s. 501.616, F.S.

This bill reenacts the following sections of the Florida Statutes ss. 501.604 and 648.44, F.S.

---

[41] *SpoofCard, LLC v. Burgum*, No. 1:19-CV-00276, 2020 WL 7234159 (D.N.D. Nov. 9, 2020).

[42] Department of Agriculture and Consumer Services, *SB 1120 Agency Analysis* (Feb. 24, 2021) (on file with the Senate Committee on Regulated Industries).

## IX. Additional Information:

### A. Committee Substitute – Statement of Substantial Changes:

(Summarizing differences between the Committee Substitute and the prior version of the bill.)

**CS by Regulated Industries on March 9, 2021:**
**The Committee Substitute:**

- Amends s. 501.059, F.S., relating to Telephone solicitation.
- Defines the terms "called party," "prior express written consent," and "signature."
- Prohibits sales calls without prior express written consent of the called party.
- Removes the provision of law authorizing the use of automated telephone dialing systems under certain circumstances.
- Provides a rebuttable presumption that a sales call made to any area code in the state is made to a Florida resident or a person in the state at the time of the call.
- Provides a cause of action, which allows the aggrieved party to obtain an injunction and recover their actual monetary damages or $500, whichever is greater.
- Authorizes a court to increase the award for willful and knowing violations.
- Revises the attorney fees and costs provision to be in favor of a prevailing plaintiff.

### B. Amendments:

None.