**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

STEPHEN MUCCIO, individually and on behalf of all other similarly situated,

Plaintiff,

v.

USHEALTH ADVISORS, LLC,

Defendant.
_________________________________________/

**CASE NO.:**

**CLASS ACTION**

**DEFENDANT'S NOTICE OF REMOVAL**

Defendant USHEALTH Advisors, LLC ("USHA"), pursuant to 28 U.S.C. §§ 1331, 1332(d), 1441(a), and 1446, with full reservation of all defenses, hereby removes this action from the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida to the United States District Court for the Southern District of Florida. In support of this Notice of Removal, USHA states as follows:

**I. Background**

1. Plaintiff Stephen Muccio commenced this case on April 3, 2022. On April 12, 2022, Plaintiff filed a First Amended Class Action Complaint (the "Complaint") against Defendant. A true and correct copy of the Complaint and other papers served upon Defendant is attached hereto as Exhibit A.

2. The suit arises from alleged text messages to Plaintiff's cellular telephone that Plaintiff alleges were initiated in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") and the Florida Telephone Solicitation Act, Fla. Stat. § 501.059 ("FTSA").

3. On April 21, 2022, Defendant's registered agent was served with a Summons and

the First Amended Class Action Complaint.

4. Pursuant to the Summons accompanying the Complaint, USHA was initially required to respond to the Complaint within twenty (20) days after service of the Summons. Pursuant to an Agreed Order entered by the state court, USHA's deadline to respond to the Complaint has been extended to June 10, 2022.

5. Defendant now timely removes this action to this Court.

## II. Bases for Jurisdiction

### A. Federal Question Jurisdiction

6. This Court has jurisdiction over this removed action pursuant to 28 U.S.C. §§ 1331 and 1441(a) given the assertion of claims under the TCPA (Counts II and III). Those claims could have been originally filed in this Court pursuant to 28 U.S.C. § 1331, as this Court has original jurisdiction over all civil actions arising under the "Constitution, laws, or treaties of the United States."

7. Plaintiff's Complaint attempts to assert violations of a federal law, namely the TCPA. The Supreme Court of the United States in *Mims v. Arrow Financial Services LLC*, 565 U.S. 368 (2012), addressed the issue of whether the federal district courts have jurisdiction over TCPA claims, holding that such a claim is, in fact, one that "arises under" the laws of the United States.

8. Pursuant to 28 U.S.C. § 1441(a), "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending."

9. This Court therefore has federal question jurisdiction.

**B. Jurisdiction under CAFA**

10. This putative class action is also within the Court's original jurisdiction pursuant to the Class Action Fairness Act ("CAFA"). *See* Pub. L. No. 109–2, 119 Stat. 4 (codified at 28 U.S.C. §§ 1332(d), 1453, 1711-1715).

11. The Supreme Court has instructed that "no antiremoval presumption attends cases invoking CAFA." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 547 U.S. 81, 89 (2014). Rather, CAFA's "provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant." *Dudley v. Eli Lilly & Co*., 778 F.3d 909, 912 (11th Cir. 2014) (quoting S. Rep. No. 109–14, p. 43, as reprinted in 2005 U.S.C.C.A.N. 3, 41). *See also Evans v. Walter Indus., Inc.*, 449 F.3d 1159, 1163 (11th Cir. 2006) ("CAFA's language favors federal jurisdiction over class actions").

12. Under 28 U.S.C. § 1332(d), federal district courts have "original jurisdiction" over civil class action lawsuits when three requirements are met: "(1) any member of the plaintiff class is a citizen of a state different from the state of citizenship of any defendant, (2) the aggregate amount in controversy exceeds $5 million, and (3) the proposed plaintiff class contains at least 100 members." *Dudley*, 778 F.3d at 911 (emphasis omitted) (citing 28 U.S.C. § 1332(d)(2), (5), (6)). Each of these requirements is satisfied here.

13. The first requirement – referred to as minimal diversity of citizenship – is satisfied by the Complaint's allegations about Plaintiff and USHA. Plaintiff alleges he is "a citizen and resident of Palm Beach County, Florida," while USHA is "a foreign [*i.e.*, non-Florida] corporation" that "maintains its primary place of business and headquarters in Texas." Compl. at ¶¶ 6 & 8. More specifically, USHA is a limited liability company organized under the laws of the State of Texas, and its principal place of business is in Fort Worth, Texas. *See*

Declaration of Dean Whaley at ¶¶ 3-4. USHA's sole member is USHEALTH Group, Inc., which is a corporation organized under the laws of the State of Delaware with a principal place of business in Texas. In any event, the allegation of a nationwide class readily satisfies this requirement. *See* Compl. at ¶ 41 (defining a nationwide "IDNC Class").

14. The requirement of at least 100 putative class members is also satisfied. The Complaint twice alleges that "Plaintiff . . . believes that Defendant caused similar telephone sales calls to be sent to at least 100 individuals located in Florida." Compl. at ¶ 14. *See also id.* at ¶ 43 ("Defendant has placed telephonic sales calls to telephone numbers belonging to at least 100 consumers throughout Florida without their prior express written consent.").

15. The aggregate amount in controversy is also established.

16. With respect to the claim under the FTSA, the Complaint alleges that "Plaintiff and [FTSA] Class members were harmed and are each entitled to a minimum of $500.00 in damages for each violation" under the FTSA. Compl. at ¶ 58. *Accord* Fla. Stat. § 501.509(10)(a)(2).

17. As explained in the accompanying Declaration of Dean Whaley, USHA is a licensed insurance agency that contracts with independent insurance advisors, licensed in one or more states around the country, to sell insurance products. The independent insurance advisors work in "regions." Whaley Decl. at ¶ 5.

18. These independent insurance advisors are independent contractors. They may market their respective insurance businesses in any lawful manner of their choosing, so long as they comply with all applicable local, state, and federal laws, including statutes like the TCPA and FTSA. Some of these independent contractors choose to communicate with their consumers via compliant telephone marketing, while others do not use any form of telemarketing at all. *See*

*id.* at ¶¶ 6-7.

19. Although USHA does not make any telephone calls or, more relevant given the allegations in this case, send any text messages for marketing purposes, it has implemented certain measures, procedures, and standards to assist contracted insurance advisors in their compliance. *See id.* at ¶ 8.

20. Among these is making available to the independent insurance advisors a do-not-call "scrubbing" service from Gryphon Networks Corp. If the independent insurance advisor utilizes certain customer relationship management ("CRM") platforms, this service – referred to as "Gryphon" – takes a selected telephone number selected to be dialed or to receive a text message and checks (or "scrubs") it against the telephone numbers recorded and maintained on USHA's do-not-call list. If the telephone number the independent insurance advisor selected to dial is on the list, then the Gryphon service blocks the transmission from being made. *See id.* at ¶ 9.

21. USHA has access to Gryphon data with respect to text messages that were attempted to be placed. *See id.* at ¶ 10. In the course of its investigation of Plaintiff's claims, and without waiver of any applicable attorney-client privilege and work product protection, USHA determined the region(s) that may have sent a text message to Plaintiff. *See id.* at ¶ 11. USHA analyzed the Gryphon data relating to the three regions from which a text was sent to Plaintiff – and which have "us[ed] the same equipment or type of equipment utilized to call Plaintiff," (Compl. at ¶ 41) – from July 1, 2021. *See id.* at ¶ 12.

22. Based on the Gryphon data regarding instances of "scrubbed" telephone numbers, USHA's analysis reveals that the independent contractors in those three regions sent over 10,000 text messages to telephone numbers with Florida area codes. *See id.* at ¶ 13. "There is a

rebuttable presumption that a telephonic sales call made to any area code in this state is made to a Florida resident or to a person in this state at the time of the call." Fla. Stat. § 501.059(8)(d).[1]

23. To be clear, USHA disputes the accusations that these or any other text messages as alleged in the Complaint violated the FTSA, TCPA, or any other law in any way, and therefore USHA does not admit that any of these instances were violations. *See id.* at ¶ 17. For example, among many other items, USHA denies the use of an automated system for the selection or dialing of telephone numbers on any of these above-referenced text messages, that the text messages were sent without prior express written consent, that the text messages were placed to residential telephone numbers, or that either of the putative classes could ever be certified. USHA further submits that the availability and use of a "scrubbing" service such as Gryphon evidences the institution of procedures in satisfaction of a safe harbor from liability.

24. However, "[g]iven that [Plaintiff's] complaint alleges that each call in violation of the [FTSA] would incur no less than $500 in damages and that [USHA] presented evidence establishing . . . over 10,000 calls to [members of the putative FTSA Class], [USHA] has shown that [Plaintiff] is seeking recovery from a pot that . . . could exceed $5 million," establishing the required amount in controversy from the FTSA claim alone. *Grant v. Cap. Mgmt. Servs., L.P.*, 449 F. App'x 598, 600 (9th Cir. 2011). *See also Dudley*, 778 F.3d at 913 ("The amount in controversy is not proof of the amount the plaintiff will recover. Rather, it is an estimate of the amount that will be put at issue in the course of the litigation.") (quoting *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 751 (11th Cir. 2010)).

25. Plaintiff also alleges that under "section 227(c)(5) of the TCPA, Plaintiff and the

[1] As noted, this presumption is a rebuttable presumption. USHA anticipates that, given the widespread use of cellular telephone numbers being used by residents of states not associated with the assigned area code, determining whether or not a telephone number with a Florida area code indeed belongs to a domiciliary of Florida will require individualized inquiries, one of many such issues raised by the definitions of the putative classes.

putative IDNC Class members are entitled to an award of $500.00 in statutory damages, for each text message sent by Defendant," and, moreover, "[t]o the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the IDNC Class." *Id.* at ¶ 63. *Accord* 47 U.S.C. §§ 227(c)(5)(B) & (C).

26. Trebled damages under the TCPA "are included in calculating the amount in controversy at issue." *M.P.G. Tent Rentals, Inc. v. Wasatch Tees of Atlanta, Inc*., No. 2:08-CV-02218-LSC, 2009 WL 10688841, *2 (N.D. Ala. Feb. 26, 2009). *See also*, *e.g.*, *Gene And Gene LLC v. BioPay LLC*, 541 F.3d 318, 324 (5th Cir. 2008) ("Given the possibility of treble damages under the TCPA, . . . the aggregate amount in controversy exceeds $5 million . . . .").

27. The Complaint broadly defines the IDNC Class to consist of "[a]ll persons within the United States who, within the four years prior to the filing of this Complaint through the date of class certification, (1) received two or more text messages within any 12-month period, (2) regarding Defendant's property, goods, and/or services, (3) to said person's residential telephone number." Compl. at ¶ 41. Without conceding that a class can ever be certified or that such a definition is valid – as it is not – and again denying that there were any violations, USHA's review of Gryphon data also reveals that, on a nationwide basis, going back four years, there are more than 3,334 persons nationwide who received two or more text messages within any 12-month period regarding USHA's goods or services (whether the text messages were to a residential telephone number is a matter in dispute and will require individualized inquiries). *See* Whaley Decl. at ¶ 15.

28. The requirement of an aggregate amount in controversy exceeding $5 million is therefore satisfied.

Case 9:22-cv-80767-DMM Document 17-1 Entered on FLSD Docket 05/26/2022 Page 8 of 9

**III. <u>Notice Given</u>**

29. Pursuant to 28 U.S.C. § 1446(d), written notice of the filing of this Notice of Removal will be promptly served on Plaintiff, and a copy will be promptly filed with the Clerk of the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida. Defendant will file a certificate with the clerk of the court showing proof of service of all notices and filings with the clerk of the state court.

**IV. <u>Removal is Timely Filed</u>**

30. This Notice has been timely filed within thirty (30) days that Defendant was served with the Summons and Complaint on April 21, 2022, as required by 28 U.S.C. § 1446(b)(2).

**V. <u>Pleadings and Process</u>**

31. In accordance with 28 U.S.C. § 1446(a), copies of all state court process and pleadings are attached to this Notice of Removal as Exhibit B.

**VI. <u>Venue</u>**

32. Pursuant to 28 U.S.C. § 1441(a), venue in this District Court is proper for purposes of removal because this action is currently pending in the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida, which is in same District as the United States District Court for the Southern District of Florida.

**VII. <u>Non-Waiver of Defenses</u>**

33. Nothing in this Notice shall be interpreted as a waiver or relinquishment of USHA's rights to assert any defense or affirmative matter, including, without limitation, motions to dismiss pursuant to Federal Rule of Civil Procedure 12.

ACCORDINGLY, pursuant to 28 U.S.C. §§ 1331, 1332(d), 1441(a), and 1446 this Court

has jurisdiction over this matter, and Defendant USHEALTH Advisors, LLC hereby removes this action from the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida to this Court.

Dated: May 23, 2022

Respectfully submitted,

By: /s/ *Jeffrey A. Backman*
JEFFREY A. BACKMAN
Florida Bar No. 662501
ROY TAUB
Florida Bar No. 116263
200 E. Broward Blvd., Suite 1800
Ft. Lauderdale, FL 33301
(954) 491-1120
jeffrey.backman@gmlaw.com
khia.joseph@gmlaw.com
roy.taub@gmlaw.com
cheryl.cochran@gmlaw.com

*Attorneys for Defendant*
*USHEALTH Advisors, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that, on May 23, 2022, this document is being electronically filed with the Court through CM/ECF, which will forward and serve a copy upon all counsel of record in compliance with the Federal Rules of Civil Procedure. I further certify that a copy of the foregoing document is being served by e-mail and FedEx overnight delivery upon the following:

Manuel S. Hiraldo, Esq.
Hiraldo P.A.
401 E. Las Olas Boulevard
Suite 1400
Ft. Lauderdale, Florida 33301
mhiraldo@hiraldolaw.com

By: /s/ *Jeffrey A. Backman*
JEFFREY A. BACKMAN

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

STEPHEN MUCCIO, individually and on behalf of all other similarly situated,

Plaintiff,

v.

USHEALTH ADVISORS, LLC,

Defendant.
____________________________________/

**CASE NO.:**

**CLASS ACTION**

**DECLARATION OF DEAN WHALEY IN**
**<u>SUPPORT OF DEFENDANT'S NOTICE OF REMOVAL</u>**

Pursuant to 28 U.S.C. §1746, I, Dean Whaley, declare as follows:

1. My name is Dean Whaley. I am over 18 years of age. I suffer no mental disabilities and am otherwise competent to make this Declaration. I have personal knowledge of the information contained in this Declaration or obtained the information through a review of the corporate books and records of USHEALTH Advisors, LLC ("USHA").

2. I am the Vice President of Financial Planning and Analysis of USHA. I am familiar with the nature of USHA's business dealings and transactions, and am authorized to make this declaration on behalf of USHA.

3. USHA is a limited liability company organized under the laws of the State of Texas.

4. USHA's principal place of business is in Fort Worth, Texas.

5. USHA is a licensed insurance agency that contracts with independent insurance advisors, licensed in one or more states around the country, to sell insurance products. The independent insurance advisors work in "regions."

6. These independent insurance advisors are independent contractors. They may market their respective insurance businesses in any lawful manner of their choosing, so long as they comply with all applicable local, state, and federal laws, including statutes like the Telephone Consumer Protection Act ("TCPA") and the Florida Telephone Solicitation Act ("FTSA").

7. Some of these independent contractors choose to communicate with their consumers via compliant telephone marketing, while others do not use any form of telemarketing at all.

8. Although USHA does not make any telephone calls or, more relevant given the allegations in this case, send any text messages for marketing purposes, it has implemented certain measures, procedures, and standards to assist contracted insurance advisors in their compliance.

9. Among these is making available to the independent insurance advisors a do-not-call "scrubbing" service from Gryphon Networks Corp. If the independent insurance advisor utilizes certain customer relationship management ("CRM") platforms, this service – referred to as "Gryphon" – takes a selected telephone number selected to be dialed or to receive a text message and checks (or "scrubs") it against the telephone numbers recorded and maintained on USHA's do-not-call list. If the telephone number the independent insurance advisor selected to dial is on the list, then the Gryphon service blocks the transmission from being made.

10. USHA has access to Gryphon data with respect to text messages that were attempted to be placed.

11. In the course of its investigation of Plaintiff's claims, and without waiver of any applicable attorney-client privilege and work product protection, USHA determined the region(s)

that may have sent a text message to Plaintiff.

12. USHA analyzed the Gryphon data relating to the three regions from which a text was sent to Plaintiff from July 1, 2021.

13. Based on the Gryphon data regarding instances of "scrubbed" telephone numbers, USHA's analysis reveals that the independent contractors in those three regions sent over 10,000 text messages to telephone numbers with Florida area codes.

14. I understand that the Complaint in this action also seeks certification of a class of "[a]ll persons within the United States who, within the four years prior to the filing of this Complaint through the date of class certification, (1) received two or more text messages within any 12-month period, (2) regarding Defendant's property, goods, and/or services, (3) to said person's residential telephone number." Compl. at ¶ 41.

15. USHA's review of Gryphon data also reveals that, on a nationwide basis, going back four years, there are more than 3,334 persons who received two or more text messages within any 12-month period regarding USHA's goods or services (whether the text messages were to a residential telephone number is a matter in dispute and will require individualized inquiries).

16. To be clear, USHA disputes the accusations that these or any other text messages as alleged in the Complaint violated the FTSA, TCPA, or any other law in any way, and therefore USHA does not admit that any of these instances were violations.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: May 23, 2022

Dean Whaley